# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAUSE OF ACTION INSTITUTE<br>1875 Eye St., NW, Suite 800<br>Washington, DC 20006,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>THE WHITE HOUSE<br>OFFICE OF MANAGEMENT AND BUDGET<br>725 17th Street, NW,<br>Washington, DC 20503,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 17-2310<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
(For Declaratory and Injunctive Relief)

1. Plaintiff Cause of Action Institute ("CoA Institute") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. chs. 5, 7, to compel agency action unlawfully withheld and unreasonably delayed based on the failure of the Defendant White House Office of Management and Budget ("OMB") to respond to two petitions for rulemaking.

2. In October 2015, CoA Institute submitted a petition for rulemaking to OMB asking it "to issue a rule ensuring the continuing force and effect of Executive Order 13457, *Protecting American Taxpayers From Government Spending on Wasteful Earmarks*[.]" Ex. 1 at 1. Executive Order 13457 directed OMB to ensure that executive-branch agencies proactively disclose congressional attempts to influence agency discretionary spending decisions.

3. In June 2016, CoA Institute submitted a second petition for rulemaking to OMB asking it "to issue updated guidance to agencies on how to make Freedom of Information Act

('FOIA') fee determinations in compliance with binding statutory and judicial authorities" and "to update its own FOIA fee regulations, which conflict with statutory definitions." Ex. 2 at 1.

4. CoA Institute has not received a response from OMB on either petition and, informed by documents secured through the FOIA, it does not appear that OMB has done any substantive work on either petition. Instead, it appears that OMB has administratively closed its work on both petitions without providing the statutory notice and justification to CoA Institute.

## JURISDICTION AND VENUE

5. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 706(1) (APA), and 28 U.S.C. § 2201 (declaratory judgment).

6. Venue is proper pursuant to 28 U.S.C. § 1391(e).

## PARTIES

7. CoA Institute is a 501(c)(3) nonprofit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair. In carrying out its mission, CoA Institute uses various investigative and legal tools, including the FOIA, to educate the public about the importance of government transparency and accountability. CoA Institute submitted the two petitions for rulemaking that are the subject of this Complaint to OMB and is an "interested person" under 5 U.S.C. § 553(e).

8. OMB is an agency within the meaning of 5 U.S.C. § 551(1). It received both petitions for rulemaking that are the subject of this Complaint. OMB has statutory authority and responsibility to provide and maintain a uniform schedule of FOIA fees for all agencies subject to the FOIA and guidelines on how to apply that schedule. *See* 5 U.S.C. § 552(a)(4)(A)(i). OMB has substantial authority to coordinate executive-branch agency budget and spending priorities and has been tasked with implementing and overseeing Executive Order 13457.

## FACTS

**I.   2015 Petition for Rulemaking: Executive Order 13457 and Disclosure of Congressional Earmark Requests**

9. In February 2008, prior to the moratorium on congressional earmarks, President George W. Bush issued Executive Order 13457. *See* Exec. Order No. 13457, 73 Fed. Reg. 6417 (published Feb. 1, 2008), Ex. 3.

10. On information and belief, Executive Order 13457 has not been rescinded, nullified, or superseded by any subsequent executive order or statute and remains in effect today.

11. In Executive Order 13457, President Bush stated that to "ensure the proper use of taxpayer funds that are appropriated for Government programs and purposes, it is necessary that the number and cost of earmarks be reduced, that their origin and purposes be transparent, and that they be included in the text of the bills voted upon by the Congress and presented to the President." *Id*. § 1.

12. The order directs federal agencies not to fund non-statutory earmarks (*i.e.*, any earmark not explicitly authorized by legislation) and—perhaps most importantly—to make all congressional communications regarding earmarks "publicly available on the Internet by the receiving agency" within 30 days. *Id*. § 2(b).

13. The order directed OMB to serve as the lead agency to ensure compliance with the order's requirements. *Id*. § 2(b), (c), (d).

14. After concerns that members of Congress were evading the congressional earmark moratorium by going directly to agencies and attempting to influence their discretionary spending decisions, CoA Institute undertook an investigation to determine whether agencies were complying with the Executive Order 13457's requirements. *See* Ex. 1 at 10 (providing summary of investigation).

15.     During that investigation, CoA Institute established that OMB understood that Executive Order 13457 applies to both legislative and executive-branch earmarks (*i.e.*, informal congressional efforts to influence agency discretionary spending decisions).  *Id.* at 5–6.

16.     Concerned that OMB was not requiring agencies to adhere to the order, on October 7, 2015, CoA Institute and Demand Progress[1] filed a petition for rulemaking with OMB presenting the results of the investigation and asking OMB "to issue a rule ensuring the continuing force and effect of Executive Order 13457, *Protecting American Taxpayers From Government Spending on Wasteful Earmarks*[.]"  *Id.* at 1 [hereinafter the 2015 Petition].

17.     To date, CoA Institute has not received any communication from OMB regarding the 2015 Petition.

## II.    2016 Petition for Rulemaking: OMB's Outdated FOIA Fee Guidance and Fee Regulations

18.     In 1986, Congress passed, and President Reagan signed into law, the Freedom of Information Reform Act of 1986.  *See* Pub. L. 99-570, 100 Stat. 3207 (1986).

19.     Section 1803 of that act directed OMB to provide a uniform schedule of FOIA fees for all federal agencies and guidelines for how to apply that schedule.  *Id.* § 1803; 5 U.S.C. § 552(a)(4)(A)(i).

20.     Entities subject to the FOIA are required to promulgate their own FOIA fee regulations, which "shall conform to the guidelines . . . promulgated" by OMB.  5 U.S.C. § 552(a)(4)(A)(i).

---

[1] Demand Progress is a nonprofit organization that "work[s] to win progressive policy changes for ordinary people through organizing and grassroots lobbying. . . .  [It believes] [a]n open and accountable government is essential for a well-functioning democracy, and smart use of technology is key to making our modern democracy work."  Demand Progress, *About*, https://demandprogress.org/about/ (last accessed Oct. 30, 2017).

4

21. On March 27, 1987, OMB finalized the fee schedule and guidelines. *See* Office of Mgmt. & Budget, Uniform Freedom of Information Act Fee Schedule and Guidelines, 52 Fed. Reg. 10012 (Mar. 27, 1987) [hereinafter "OMB Guidelines"], Ex. 4.

22. Although Congress has amended the FOIA several times since 1987, OMB has never updated its guidelines, which now conflict with the FOIA statute and judicial authorities.

23. One important way that the OMB Guidelines conflict with the FOIA statute is in its definition of a "representative of the news media."

24. The FOIA requires agencies to furnish documents to requesters at a reduced cost if the requester qualifies as one of several statutory categories of requesters. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

25. Since these categories were added to the statute, the "representative of the news media" fee status has been the most contentious.

26. In its 1987 guidance, OMB issued its interpretation of that term, which was, at that time, not defined in the statute. *See* Ex. 4 at 7.

27. The OMB Guidelines state that the term "refers to any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public." *Id*.

28. This became known as the "organized and operated" standard, and agencies across the federal government adopted it in their respective FOIA fee regulations.

29. In 2007, Congress amended the FOIA and provided a statutory definition of a "representative of the news media" that differed in meaningful ways from the definition in the OMB Guidelines. *See* Open Government Act of 2007, Pub. L. 110-175, § 3; 121 Stat. 2524 (2007); 5 U.S.C. § 552(a)(4)(A)(ii).

30. Despite Congress providing a statutory definition that does not include the "organized and operated" standard, that standard still appears in dozens of agency FOIA regulations, including numerous cabinet-level and other important agencies. *See* Ex. 2 at 4 nn.26 & 27 (collecting list of agencies that employed outdated "organized and operated" standard in regulatory definitions as of June 2016).

31. OMB itself still employs the anachronistic standard nearly nine years after Congress provided a statutory definition. *See* 5 C.F.R. § 1303.30(j).

32. In 2015, the D.C. Circuit held, *inter alia*, that it was no longer proper for agencies to use the "organized and operated" standard because it conflicts with the FOIA statute. *See Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1125 (D.C. Cir. 2015).

33. In April 2016, the FOIA Federal Advisory Committee recommended to David Ferriero, the Archivist of the United States, that he urge OMB to update the guidelines. *See* Letter from James V.M.L. Holzer, Chair, FOIA Fed. Advisory Comm., *et al.*, to David S. Ferriero, Archivist of the U.S., Nat'l Archives and Records Admin. (Apr. 19, 2016), *available at* http://bit.ly/2eQFkeR.

34. As of October 2016, Archivist Ferriero had "sent the committee's recommendations . . . to [OMB] [but he was] still waiting for a response." Tr. of Oct. 25, 2016 FOIA Fed. Advisory Comm. Meeting at 2–3, *available at* http://bit.ly/2hv9frq.

35. Although the OMB Guidelines are out of date and conflict with the statute in important ways, agencies continue to rely on the document and use it to resist regulatory comments asking them to update their policies.

36.     For example, on April 6, 2016, the Department of State finalized new FOIA regulations, including at update to its fee provisions.  *See* Dep't of State, Public Access to Information, 81 Fed. Reg. 19863 (Apr. 6, 2016).

37.     In response to a comment[2] by CoA Institute regarding the so-called "middleman standard,"[3] the Department of State replied that OMB "has policymaking responsibility for issuing fee guidance.  For this reason, the Department [of State] defer[ed] to OMB with regard to this suggestion."  81 Fed. Reg. at 19863.

38.     In addition to the above-mentioned example, the OMB Guidelines are also out of step with other jurisprudential developments, such as which requesters qualify as educational institutions, and new statutory limitations on agencies' ability to charge fees when they fail to comply with statutory time limits.

39.     Thus, it is crucial that OMB update its guidelines to bring them in line with the current FOIA statute and relevant jurisprudence.

40.     On June 2, 2016, in an effort to encourage OMB to update its guidelines, CoA Institute filed a petition for rulemaking asking OMB "to issue updated guidance to agencies on how to make [FOIA] fee determinations in compliance with binding statutory and judicial authorities."  Ex. 2 at 1 [hereinafter the 2016 Petition].

---

[2] *See* Letter from R. James Valvo, III, CoA Inst., to Marianne Manheim, Office of Info. Programs & Servs., Dep't of State (Sept. 21, 2015) (commenting on DOS RIN 1400-AD44) (on file with CoA Inst.).

[3] The "middleman standard" is an argument agencies use to deny FOIA requesters preferable fee treatment by claiming the requester is a middleman or information broker and is not in the practice of releasing information to the public itself.  The D.C. Circuit has found this argument lacking.  *See Cause of Action*, 799 F.3d at 1125 ("We also disagree with the suggestion that a public interest advocacy organization cannot satisfy the statute's distribution criterion because it is 'more like a middleman for dissemination to the media than a representative of the media itself' . . . [T]here is no indication that Congress meant to distinguish between those who reach their ultimate audiences directly and those who partner with others to do so[.]").

41.     CoA Institute also petitioned "OMB to update its own FOIA fee regulations, which conflict with statutory definitions." *Id*.

42.     To date, CoA Institute has not received any communication from OMB regarding the 2016 Petition.

### III.    FOIA Request to Determine Whether OMB was processing either Petition

43.     On March 10, 2017, in an effort to secure records revealing OMB's progress in reviewing both the 2015 Petition and 2016 Petition, CoA Institute sent a FOIA request to OMB seeking "All records that relate in any way (*e.g*., receipt, forwarding, assignment to staff, transmission to other agencies or offices, meetings, memos, *etc*.) to the . . . 2015 Petition." Ex. 5 at 1.

44.     CoA Institute's FOIA request sought the same information regarding the 2016 Petition. *Id*. at 2.

45.     OMB did not respond substantively to the FOIA request, but during litigation seeking to compel production, OMB located and disclosed four records evidencing its work on the two petitions. *See* Ex. 6.

46.     The first record is a June 13, 2016 email from Melanie Pustay, director of the Department of Justice Office of Information Policy, who CoA Institute had copied on the 2016 Petition, forwarding the petition to Thomas Hitter at OMB. *Id*. at 1.

47.     The second record is a June 15, 2016 email from Mr. Hitter to Sharon Mar at OMB asking if she had seen the 2016 Petition, and a brief reply from Ms. Mar noting that she had not yet seen the 2016 Petition. *Id*. at 2.

48.     The third record appears to be from a request tracking system that confirms OMB received and logged the 2016 Petition. An entry in the tracking system shows that the "Workflow Status" on the 2016 Petition is "CLOSED." *Id*. at 3–4.

49. The fourth record appears to be from a request tracking system that confirms OMB received and logged the 2015 Petition. The entry in the tracking system shows that the "Workflow Status" on the 2015 Petition is "CLOSED." *Id*. at 5–6.

49. The fourth record appears to be from a request tracking system that confirms OMB received and logged the 2015 Petition. The entry in the tracking system shows that the "Workflow Status" on the 2015 Petition is "CLOSED." *Id*. at 5–6.

50. OMB did not identify or disclose any other records revealing that the agency is still processing either petition or intends to respond to CoA Institute in any way.

## COUNT 1

### Violation of the APA: Failure to Act on Petitions for Rulemaking or Provide a Reasoned Denial

51. CoA Institute repeats all of the above paragraphs.

52. The APA affords interested persons the right to petition an agency for the issuance, amendment, or repeal of a rule. 5 U.S.C. § 553(e).

53. The APA requires agencies to process such petitions "within a reasonable time[.]" 5 U.S.C. § 555(b).

54. The APA requires agencies to provide prompt notice of any denial of a petition made by an interested person and a statement explaining the grounds for the denial. 5 U.S.C. § 555(e).

55. OMB therefore has an obligation to respond to CoA Institute's petitions for rulemaking, either by initiating the appropriate rulemaking or by denying the petitions and providing a reasoned statement explaining the grounds for the denial.

56. The APA authorizes this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

57. CoA Institute is an "interested person" within the meaning of the APA. 5 U.S.C. § 553(e).

58.     On October 7, 2015, CoA Institute petitioned OMB to "issue a rule ensuring the continuing force and effect of Executive Order 13457, *Protecting American Taxpayers From Government Spending on Wasteful Earmarks*[.]"  Ex. 1 at 1.

59.     On June 2, 2016, CoA Institute petitioned OMB "to issue updated guidance to agencies on how to make [FOIA] fee determinations in compliance with binding statutory and judicial authorities" and "to update its own FOIA fee regulations, which conflict with statutory definitions." Ex. 2 at 1.

60.     OMB has not responded to either petition, either by initiating a rulemaking or by providing a reasoned denial, and has not otherwise communicated with CoA Institute regarding the two petitions.

61.     On information and belief, OMB has closed all administrative work on both petitions.

62.     OMB's failure to respond to the two petitions, either by initiating a rulemaking or by providing a reasoned statement explaining the grounds for denial, constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of the APA.

## RELIEF REQUESTED

WHEREFORE, Plaintiff CoA Institute respectfully requests and prays that this Court:

a.     Declare that OMB's failure to respond to CoA Institute's two petitions for rulemaking constitutes agency action unlawfully withheld or unreasonably delayed;

b.     To the extent that OMB's actions constitute a denial of the two petitions for rulemaking, declare that OMB has unlawfully failed to provide CoA Institute with notice of and a statement supporting its denial;

c. Order OMB to respond to both petitions for rulemaking, either by initiating the appropriate rulemaking process or by providing a reasoned statement explaining the grounds for denial;

d. Award CoA Institute its costs and reasonable attorney fees incurred in this action, pursuant to 28 U.S.C. § 2412; and

e. Grant such other relief as the Court may deem just and proper.

Date: November 2, 2017

Respectfully submitted,

*/s/ R. James Valvo, III*
R. James Valvo, III (D.C. Bar No. 1017390)
Lee A. Steven (D.C. Bar No. 468543)
John J. Vecchione (D.C. Bar No. 431764

CAUSE OF ACTION INSTITUTE
1875 Eye St., NW, Suite 800
Washington, DC 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
james.valvo@causeofaction.org
lee.steven@causeofaction.org
john.vecchione@causeofaction.org

*Counsel for Plaintiff*